**GREENWOOD GAMING AND ENTERTAINMENT, INC.,**
Petitioner

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued March 9, 2011.

Decided May 5, 2011.

Robert B. Hoffman, Harrisburg, for petitioner.

Patrick S. Cawley, Deputy Attorney General, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY President Judge LEADBETTER.

Presently before this court in its original jurisdiction is the preliminary objection (demurrer) of the Commonwealth, Department of Revenue, to the petition for review filed by Greenwood Gaming and Entertainment, Inc., seeking relief in the nature of a declaratory judgment. Specifically, Greenwood seeks a declaration that the tax rate imposed pursuant to 4 Pa.C.S. § 13A62 on the daily gross table game revenue from fully automated electronic gaming tables is 34% rather than the 48% sought by the Department. This issue, which requires construction of the recently enacted statutory provision, is one of first impression.

Prior to setting forth the underlying facts, we note that the 2010 amendments to the Pennsylvania Race Horse Development and Gaming Act (Act),[1] authorized the commencement of table game operations, including fully automated electronic gaming tables [EGTs][2] that allow patrons to play table games without the participation of a live dealer. As noted in Section 1102, the General Assembly authorized the operation of table games in order to "supplement slot machine gaming by increasing revenues to the Commonwealth and providing new employment opportunities by creating skilled jobs for individuals related to the conduct of table games at licensed facilities...." 4 Pa.C.S. § 1103(2.1). The General Assembly also noted that the authorization of limited gaming was intended to "provide a significant source of new revenue to the Commonwealth to support property tax relief, wage tax reduction, economic development opportunities and other similar initiatives." *Id.* at subsection (3). In addition to a one-time nonrefundable authorization fee (*see* Section 13A61, 4 Pa.C.S. § 13A61) and local share assessments (*see* Section 13A63, 4 Pa.C.S. § 13A63), the Act imposes a tax on the daily gross table game revenue. Section 13A62 provides in pertinent part:

**(a) Imposition.—**

(1) *Except* as provided in paragraphs (2) and (3), each certificate holder shall report to the department and pay from its daily gross table game revenue, on a form and in the manner prescribed by the department, a tax of 12% of its daily gross table game revenue.

(2) *In addition to* the tax payable under paragraph (1), each certificate holder shall report to the department and pay from its daily gross table game revenue, on a form and in the manner prescribed by the department, a tax of 34% of its daily gross table game revenue from each table game played on a fully automated electronic gaming table.

---

1. The Act appears at 4 Pa.C.S. §§ 1101–1904. The 2010 amendments were added by the Act of January 7, 2010, P.L. 1.

2. An "electronic gaming table" is defined as "[a] gaming table approved by [the Board] that is a mechanical, electrical or computerized contrivance, terminal, machine or other device which, upon insertion or placement of cash or such equivalents therein or thereon, or upon a wager or payment of any consideration whatsoever, is available for play or operation by one or more players as a table game." 4 Pa.C.S. § 1103. The term includes any gaming table "where a wager or payment is made using an electronic or computerized wagering system or payment." *Id.* The term does not include a slot machine. *Id.*

   A "fully automated electronic gaming table" is defined as an "electronic gaming table determined by the [Board] to be playable or operable as a table game without the assistance or participation of a person acting on behalf of a certificate holder [or, a slot machine licensee that holds a table game operation certificate from the Board]." *Id.* Thus, a live dealer is not needed with a fully automated EGT.

(3) The tax reported and payable under paragraph (1) by each certificate holder shall be 14% of daily gross table game revenue for a period of two years following commencement of table games operations at its licensed facility.

4 Pa.C.S. § 13A62(a) (emphasis added).

Turning to the matter presently before us, according to the petition for review, Greenwood owns and operates a casino, Parx Casino, pursuant to a slot operator license issued by the Gaming Control Board (Board). The casino currently offers 3465 slot machines and 57 live table games (*i.e.*, with a dealer) and plans to add 23 fully automated EGTs upon the Board's approval. The fully automated EGTs will allow patrons to play blackjack, three card poker, and other games in a completely electronic setting without a dealer. The electronic games can qualify as either fully automated EGTs or slot machines depending on the software installed. The petition further avers that:

> When operated so as to qualify as [fully automated] EGTs ... the elec-

tronic blackjack and poker games produce a gross revenue to the casino (*i.e.*, before costs and taxes) known as the "hold," that is significantly less than the hold when those same electronic blackjack and poker games are operated so as to qualify as slot machines.

> When operated so as to qualify as slot machines, the same electronic [games] are subject to a total tax of approximately 55%.

Petition for Review, ¶¶ 23, 24.

The Department notified Greenwood that the tax rate of 48% would apply to the "daily gross table game revenue" generated by fully automated EGTs.[3] Believing that the tax rate imposed on the daily gross table game revenue generated by fully automated EGTs under 4 Pa.C.S. § 13A62 is only 34%, Greenwood commenced the instant action seeking a declaration to that effect. In support of its position, Greenwood attached to its petition legislative history, legislative debate and a fiscal note accompanying a conference committee report.[4] The Department

---

**3.** "Gross table game revenue" is defined in 4 Pa.C.S. § 1103 as the total of the cash/cash equivalents received from the playing of a table game minus, inter alia, the total of the cash/cash equivalents paid to players as a result of playing a table game and the cash/cash equivalents paid to purchase annuities to fund prizes payable to players.

**4.** Of particular note, the attached excerpt from the Legislative Journal reflects Representative Dante Santoni, described by Greenwood as the sponsor of the bill behind Section 13A62, describing the tax rate applicable to fully automated EGTs:

> [Q]: So, Mr. Speaker, all of the claims that we have heard about job creation and good jobs and well-paying jobs and how wonderful this bill is because we are going to put Pennsylvanians to work could all be for naught if the casinos would decide that 250 of their table games would be fully automated as opposed to having a live individual running the table game?

> Mr. Santoni: Mr. Speaker, just to be clear: Yes. [The casinos] are allowed to have the maximum amount of fully automated machines at 250, but the tax rate is different. *The tax rate is 34[%] if the casino chooses to use those types of machines; 16[%] initially, 14[%] after July 1 if they do not and use the standard tables that will require a dealer or a person, an employee.*

Legislative Journal (Dec. 15, 2009) at 2678–79, attached to Petition for Review (emphasis added).

The House Committee on Appropriations' Fiscal Note is also attached to the petition for review. That document includes a discussion of the fees, local share assessments and taxes imposed on the operation of table games. The Fiscal Note states, in pertinent part:

> "*In addition to* the fees collected, a state tax of 14% is imposed upon the daily gross table games revenue. This rate would be applicable for the first two years of operation for each facility, after which time the rate will decrease to 12%. This tax and any

filed a preliminary objection in the nature of a demurrer, contending that the statute clearly imposes a tax rate of 48%: "The statute clearly requires a tax rate of 34% on daily gross table game revenue from each table game played on a fully automated electronic gaming table 'in addition to' the base tax rate, which the statute clearly sets at 14% for the first two years of operation." Preliminary Objection, ¶ 16.

In its brief in support of its preliminary objection, the Department reiterates its position that Section 13A62 is clear and unambiguous, rendering consideration of other possible indicia of legislative intent unnecessary and improper. The Department contends as follows:

> The language of 4 Pa.C.S. § 1362A(a)(1) [sic] [5] establishes in plain language that a tax rate of 12% shall apply, except as modified in paragraphs (2) and (3). Paragraph (3) modifies the first paragraph to the extent that a certificate holder, such as Greenwood, is within the first two years of its table game operations. As such, the baseline tax rate is 14%. 4 Pa.C.S. § 1362A(a)(3) [sic]. Paragraph (2) states in clear language that, *"[i]n addition to the tax payable under paragraph (1)*, each certificate holder shall report to the department and pay from its daily gross table game revenue ... a tax of 34% of its daily gross table game revenue from each table game played on a fully automated electronic gaming table." 4 Pa.C.S. § 1362A(a)(2) [sic] (emphasis added). Accordingly, the plain language of this statute requires that the tax rate applicable to fully automated electronic gaming tables, which are within the first two

years of operation, be calculated by adding 14% and 34%. Thus, the tax rate of 48% that was determined by the Department of Revenue was correct....

Department's brief at 9 (footnote added).

On the other hand, Greenwood contends that Section 13A62 creates a two-tiered tax scheme: subsection (a)(1) sets forth the general rule that gross table game revenue is subject to a 12% tax; subsection (a)(2) sets forth a permanent exception to (a)(1), that is, a 34% tax rate applies to game revenue generated from fully automated table games; and, subsection (a)(3) sets forth a temporary exception to (a)(1) by imposing a 14% tax rate rather than a 12% tax rate on gross table game revenue during the taxpayer's first two years of operation. According to Greenwood:

> The key to the proper construction lies in giving proper effect to the introductory words of Section 1362A(a)(1) [sic],[6]—"[e]xcept as provided in paragraphs (2) and (3)." That phrase creates two exceptions to the general rule imposing a 12% rate applicable to the predominant type of newly-authorized game, table games. Section 1362A(a)(2) [sic], the first exception, then identifies a second type of newly-authorized game and imposes a higher tax rate on its revenue. The 34% rate imposed on [fully automated EGT] revenue is, in fact, the base tax rate for slot machine revenues, which are then also subject to local share assessments. 4 Pa.C.S.A. § 1403(b).
>
> The effect of the introductory "except" language in Subsection 1 is to immediately and completely remove the

accrued interest is payable weekly to the Department of Revenue. *The tax rate on fully automatic electronic gaming tables is 34%.*
Fiscal Note at 2, attached to Petition for Review (emphasis added).

**5.** Presumably, the Department is referring to Section 13A62.

**6.** As with the Department, we presume Greenwood is citing to Section 13A62.

taxation of [fully automated EGT] revenues from the ambit of that Subsection; as to the taxation of [fully automated EGTs], it means "jump immediately to Paragraph 2." Used, as here, as a preposition, that is what "except" means—it "excludes." ... The "conduct" that is "exempt" from the operation of § 1364A(a)(1) [sic] is the taxation of revenue generated from [fully automated EGTS].

Section 1396A(a)(2) [sic], as an explicitly identified exception, thus stands apart from Subsection 1396(a)(1) [sic]. No language suggests, let alone requires, that Paragraph 2 should be read as layered upon Paragraph 1, as the Commonwealth does. That layering fails to give effect to the language excluding § 1396A(a)(2) [sic] from § 1396A(a)91) [sic].

Greenwood's brief at 9–10. Greenwood also engages the rules of statutory construction, arguing the common and approved meanings of "except" and "in addition to" to further support its conclusion that subsection (a)(2) provides a tax rate "separate and apart" from the base tax established in (a)(1).

Finally, Greenwood suggests that, at a minimum, the tax provision must be deemed to be ambiguous as it is subject to more than one reasonable interpretation, which not only then permits consideration of other indicia of legislative intent but also requires that the statute be construed strictly and all doubt resolved in favor of the taxpayer. *See* 1 Pa.C.S. §§ 1921, 1928.

We agree with the Department that the statutory provision is not ambiguous and clearly imposes a tax rate of 48% on revenue generated from fully automated EGTs. Subparagraph (a)(1) indicates that unless subparagraph (2) or (3) applies, the taxpayer pays a tax rate of 12% [here, 14% because (a)(3) applies] on game table revenue. This establishes a base tax applicable to all revenue generated from table games. Subparagraph (2), if applicable, then imposes an *additional* tax on game table revenue if it is derived from fully automated EGTs. To conclude otherwise completely ignores the language "in addition to," which we construe to mean "above and beyond" or "adding something to" the provisions of (a)(1). Even if subparagraph (a)(2) is construed as a stand alone provision as Greenwood contends, it still requires the imposition of a total tax rate of 48%. Standing alone, the express language of subparagraph (a)(2) imposes two separate taxes on fully automated EGT revenue. Pursuant to subparagraph (a)(2), revenue generated from fully automated EGT is taxed at 34% in addition to or plus the tax required under subparagraph (1), otherwise, as already stated, the phrase "in addition to" is given no effect, in violation of our rules of statutory construction. Finally, because the statutory provision is not ambiguous, there is no need to resort to other indicia of legislative intent. Indeed, such resort would be improper.

Based upon the foregoing, the Department's preliminary objection in the nature of a demurrer is sustained and the petition for review is dismissed with prejudice.

### *ORDER*

AND NOW, this 5th day of May, 2011, the Commonwealth of Pennsylvania, Department of Revenue's preliminary objection in the nature of a demurrer to Greenwood Gaming and Entertainment, Inc.'s petition for review is sustained and the petition for review is dismissed with prejudice.